An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-95

Filed 7 January 2026

Mecklenburg County, Nos. 19CR222118-590, 19CR222119-590, 19CR222120-590, 19CR222123-590, 19CR222124-590

STATE OF NORTH CAROLINA

v.

JAVONTE TAVARIS MILLER, Defendant.

Appeal by defendant from final judgment entered 1 March 2024 by Judge Donald Cureton in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 September 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Allison J. Newton, for the State.*

*W. Michael Spivey for defendant-appellant.*

DILLON, Chief Judge.

## I. Background

During the night of 12 June 2019, officers from the Charlotte Mecklenburg Police Department ("CMPD") were conducting surveillance on Defendant Javonte Miller. CMPD officers went to the Super 8 Motel ("Motel") at 3200 Queen City Drive

in Charlotte, North Carolina pursuant to their investigation of Defendant and his outstanding warrant. Officers observed Defendant driving a black Dodge Charger into the Motel parking lot and parking approximately three parking spaces away from Motel room 109. Officers positively identified Defendant, waited for Defendant to exit the vehicle, and apprehended Defendant pursuant to a valid arrest warrant. At the time of arrest, Defendant was holding keys and a cigarette pack. The cigarette pack contained a paper sleeve with a handwritten "109" on it and inside was a magnetic key card with the Motel's logo on it. Officers observed an open beer can in the drink console of the vehicle and searched the vehicle to find any additional evidence. During the search, officers located a little over twenty-eight grams of suspected ecstasy in the center console of the car among other items.

Following the vehicle search, a search warrant was obtained for Motel room 109. Inside the room, officers encountered an unidentified woman and a black bookbag with pills similar to the pills found inside the vehicle. The pills were inside one large bag, and within the large bag there were five individually wrapped baggies with the similar-colored pills.

Following this encounter, Defendant was charged with trafficking in methamphetamine by transportation in 28 grams or more, trafficking in methamphetamine by possession of more than 400 grams, conspiracy to traffic in drugs, possession with intent to sell or deliver cocaine, carrying a concealed weapon, and possession of a firearm by a felon. At trial, Andrew Oprysko ("Expert") from

CMPD's crime laboratory who tested the pills from the center console and black bookbag, testified as a forensic chemistry expert. Expert tested a sample of the 100 pills collected from the center console and indicated the net weight was 33.58 grams plus or minus 2.79 grams. Additionally, Expert tested twenty-two of the 1,121 pills in the black bookbag for a gross weight of 421.76 grams and an estimated net weight of 416 grams. Net weight is the weight of the pills minus the estimated weight of the pills packaging. Expert's testimony of 416 grams was considered an estimate because the pills were tested in the packaging.

At the close of the State's evidence, the trial court denied Defendant's motion to dismiss. At the close of all evidence, Defendant motion to dismiss was again denied. Among other charges, the trial court instructed the jury on unlawful *possession* of twenty-eight grams or more of methamphetamine for the trafficking in methamphetamine by *transportation* charge. There were no objections to the jury instruction. The jury returned a unanimous guilty verdict on all the charges against Defendant. Defendant appeals.

## II. Analysis

Defendant appeals on four grounds. We address each issue in turn.

### A. Fatal Variance

Defendant contends the difference between the indictment and jury instruction for how he trafficked the methamphetamine constitutes a fatal variance warranting reversal on this charge. We disagree.

The first issue is whether Defendant properly preserved his fatal variance argument as a sufficiency of the evidence issue where he made general motions to dismiss. North Carolina Rules of Appellate Procedure Rule 10(a) defines the general rule for preserving issues for appellate review. *See* N.C. R. App. P. 10(a). This Court, in *State v. Juran*, held a timely general motion to dismiss made pursuant to Rule 10(a)(3) is a "properly preserved sufficiency of the evidence issue [ ]." 294 NC. App. 81, 85 (2024); *see State v. Golder*, 374 N.C. 238, 245–46 (2020).

In *Juran*, the defendant alleged the indictment failed to conform to the trial evidence. 294 N.C. App. at 83. The indictment against defendant was for assault or affray on an emergency medical technician ("EMT"). *Id.* at 86. At trial, the assault victim testified she was a paramedic, not an EMT. *Id.* There, the defendant argued the State failed to provide substantial evidence at trial indicating the victim was an EMT as stated in the indictment. *Id.* at 85. This Court held the fatal variance argument was preserved by the defendant's general motions to dismiss. *Id.* Nonetheless, this Court found no fatal variance error. *Id.* at 87.

Here, Defendant's fatal variance argument is based on the difference between the indictment and jury instruction, not the indictment and evidence presented at trial like in *Juran*. The decision in *Juran* regarding preservation is premised on a direct argument regarding sufficiency of the evidence, Defendant's is not. Nonetheless, given our State Supreme Court's holding in *Golder* and this Court's recent holding in *Juran*, we agree with Defendant in determining Defendant's fatal

variance argument is preserved pursuant to the general motions made at trial even if there is no direct argument regarding sufficiency of the evidence. *See* N.C. R. App. P. 10(a)(3).

The second issue is whether Defendant can show a fatal variance requiring reversal of the possession conviction. Defendant's fatal variance argument is pursuant to the trial court's denial of his motion to dismiss. "Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Crockett*, 368 N.C. 717, 720 (2016). Motions to dismiss are reviewed in a light most favorable to the State in determining whether "there is substantial evidence of (1) each essential element of the offense charged . . . and (2) [the] defendant [is] the perpetrator of the offense." *State v. Powell*, 299 N.C. 95, 98 (1980). When these two elements are present, the motion to dismiss is properly denied. *Id.* "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Turnage*, 362 N.C. 491, 493 (2008) (citation omitted).

A fatal variance exists when there is a discrepancy between "either the allegations and the offense or the allegations and the jury instruction." *Juran*, 294 N.C. App. at 83. A fatal variance is both (1) material, and (2) prejudices the defendant. *Id.* Material means the variance goes to an essential element of the crime charged. *Id.* Prejudice may be shown by a defendant's inability to prepare her

defense via lack of notice or by showing the defendant is subject to double jeopardy. *Id.* at 87. A defendant carries the burden to establish how she is prejudiced. *Id.*

The purpose of this rule in prohibiting a variance between the indictment and evidence presented at trial is "(1) insur[e] the defendant is able to prepare his defense against the crime with which he is charged, and (2) protect the defendant from another prosecution for the same incident." *State v. Norman*, 149 N.C. App. 588, 594 (2002) (citing *State v. Coffey*, 289 N.C. 431, 438 (1976); *State v. McDowell*, 1 N.C. App. 361, 365 (1968)). A variance requires a reversal when a defendant is prejudiced. *State v. Christopher*, 307 N.C. 645, 649–50 (1983).

The first issue regarding the merits of Defendant's fatal variance argument is whether the difference between the indictment and jury instruction is material. We believe it is. A grand jury indictment must "conform to the equivalent material aspects of the jury charge[.]" *State v. Williams*, 318 N.C. 624, 631 (1986). "A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged." *State v. Barnett*, 368 N.C. 710, 713 (2016).

The essential elements of trafficking by transportation and trafficking by possession require different essential elements. Trafficking by transportation requires (1) knowingly *transporting* methamphetamine, and (2) in an amount greater than 28 grams. *See* N.C.G.S. § 90-95(h)(3b). Transportation requires a "substantial movement" of contraband. *State v. Greenidge*, 102 N.C. App. 447, 451 (1991).

Substantial movement may be defined as "real carrying about or [movement] from one place to another." *State v. Outlaw*, 96 N.C. App. 192, 197 (1989) (quoting *Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 122 (1923)).

Alternatively, the essential elements of trafficking by possession require (1) knowingly *possessing* methamphetamine, and (2) the amount possessed was greater than 28 grams. *See* N.C.G.S. § 90-95(h)(3b). The "knowing possession" element may be established by actual or constructive possession. *State v. Reid*, 151 N.C. App. 420, 428 (2002). Therefore, because transportation and possession are inherently different, the difference is material. However, concluding the difference is material is not the end of this inquiry. Next, we must determine whether this material difference prejudices Defendant. Defendant asserts the difference failed to put him on notice of the charges against him and subjects him to double jeopardy. We disagree.

There is no fatal variance prejudice where a criminal defendant is indicted and charged under the same "catch-all" provision. *See State v. Davis*, 223 N.C. App. 296, 299 (2012); *see also State v. Williams*, 242 N.C. App. 361, n.2 (2015). This Court in *Davis* dealt with a fatal variance issue concerning a charge under N.C.G.S. § 90-95(h)(4) (2011) providing "[a]ny person who sells, manufactures, delivers, transports, or possess four grams or more of opium, opiate, or any salt, compound, derivative, or preparation of opium or opiate . . . shall be guilty of 'trafficking in opium or heroin.' " 223 N.C. App. at 298. There, defendant argued there was a fatal variance because

the indictment alleged the defendant was trafficking in "opium," and evidence at trial indicated defendant was trafficking in an opium derivative. *Id.* This Court reasoned because the plain language of the statute does not create distinct crimes of possession or transportation of an opium derivative but rather permits possession or transportation to constitute *trafficking in opium or heroin*, no fatal variance between the indictment and evidence existed. *Id.*

Applying the plain language reasoning in *Davis*, N.C.G.S. § 90-95(h)(3b) does not create distinct crimes of possession or transportation. Instead, either may qualify as "trafficking in methamphetamine." Defendant was indicted under N.C.G.S. § 90-95(h)(3b) which mirrors the language of the statute in *Davis*: "[a]ny person who sells, manufactures, delivers, transports, or possesses . . . shall be guilty of 'trafficking in methamphetamine.'" Defendant's indictment was for the transport of methamphetamine, but the jury instruction was for possession of methamphetamine. Therefore, while the verbs charging Defendant under N.C.G.S. § 90-95(h)(3b) were distinct, the resulting crime is not. Additionally, as explained below, there was sufficient evidence to charge Defendant with either possession or transportation. Thus, Defendant was on notice of the crime for which he was eventually charged and cannot claim prejudice.

Additionally, Defendant does not indicate the evidence was insufficient to charge Defendant with transportation or possession. Despite the material difference, the evidence was sufficient to establish trafficking by transportation or possession.

Possession of a controlled substance can be actual or constructive. *State v. Minor*, 290 N.C. 68, 73 (1976). The constructive possession doctrine is typically used in cases where contraband is found in a home or vehicle associated with a defendant. *State v. Chekanow*, 370 N.C. 488, 491 (2018). Constructive possession of a controlled substance requires a defendant to have "the intent and capability to maintain control and dominion over' it." *State v. Beaver*, 317 N.C. 643, 648 (1986). "Intent" and "capability" for constructive possession are analyzed under a totality of the circumstances analysis. *See Miller*, 363 N.C. at 99; *see also State v. James*, 81 N.C. App. 91, 93 (1986).

"[A]n inference of constructive possession can . . . arise from evidence which tends to show that a defendant was the custodian of the vehicle where [contraband] was found." *State v. Mitchell*, 224 N.C. 171, 177 (2012) (citing *State v. Best*, 214 N.C. App. 39, 47 (2011)). This rule applies to both a vehicle owner and simply a person borrowing a vehicle. *Id.* This power to control the vehicle is enough to provide the inference of "knowledge and possession to go to the jury." *Id.*

Regarding the trafficking by possession charge, Defendant constructively possessed the methamphetamine found in the car. Defendant was the sole occupant of the Dodge Charger at the time of apprehension. Additionally, while it is not clear whether Defendant owned the Dodge Charger, it is clear he was the only person exercising control of the car at the time of apprehension. These factors indicate Defendant was the sole custodian of the vehicle at the time of apprehension and

maintained sole control over the vehicle. Therefore, Defendant constructively possessed the methamphetamine found in the center console.

Likewise, the facts are sufficient for trafficking by transportation charge. Defendant undoubtedly substantially moved the 28 grams of methamphetamine, as he was observed driving the Dodge Charger back into the Motel parking lot where the methamphetamine was soon found. Therefore, the difference in the essential elements of "transport" versus "possession" is a distinction without a difference.

Thus, despite the material difference between the indictment and jury instruction, there is no prejudice to Defendant for the resulting "trafficking in methamphetamine" charge because the evidence was sufficient to support either.

## B. Constructive Possession

Defendant contends the trial court incorrectly denied his motion to dismiss because the evidence was insufficient to prove Defendant possessed 400 grams of methamphetamine found in a black bookbag of Motel room 109. For the following reasons, we disagree.

A motion to dismiss based on insufficient evidence is reviewed de novo. *State v. Crockett*, 368 N.C. 717, 720 (2016). Motions to dismiss are reviewed in a light most favorable to the State in determining whether "there is substantial evidence (1) of each essential element of the offense charged . . . and (2) [the] defendant [is] the perpetrator of the offense." *State v. Powell*, 299 N.C. 95, 98 (1980). Competent and incompetent evidence may be considered and any reasonable inferences drawn from

such. *State v. McKinney*, 288 N.C. 113, 117 (1975). This evidence and inferences are considered in a light most favorable to the State. *Id.*

As previously stated, the constructive possession doctrine is typically used in cases where contraband is found in a home or vehicle associated with a defendant. *State v. Chekanow*, 370 N.C. 488, 491 (2018). However, in a case where a defendant lacks exclusive possession over the area where the contraband is found, other incriminating circumstances must be shown by the State. *State v. Davis*, 325 N.C. 693, 697 (1989). Our State Supreme Court considers the following factors for a constructive possession analysis:

> (1) the defendant's ownership and occupation of the property [ ]; (2) the defendant's proximity to the contraband; (3) indicia of the defendant's control over the place where the contraband is found; (4) the defendant's suspicious behavior at or near the time of the contraband's discovery; and (5) other evidence found in the defendant's possession that links the defendant to the contraband.

*Miller*, 363 N.C. at 99–100; *see Chekanow*, 370 N.C. at 496. The proximity and indica of control factors are frequently considered in this analysis. *Miller*, 363 N.C. at 100.

Defendant constructively possessed the 400 grams of methamphetamine found in the black bookbag in room 109. Considering the foregoing factors, at the time of apprehension, Defendant had parked approximately three parking spaces away from room 109, Defendant possessed a key card to room 109 indicating a certain degree of control over the room and its contents, and the pills found in the black bookbag in room 109 were similar to pills found in the center console of the Dodge Charger

Defendant was driving. Therefore, in the light most favorable to the State, Defendant constructively possessed the 400 grams of methamphetamine found in Motel room 109.

## C. Jury Instructions

Defendant next contends the trial court erred when it failed to instruct the jury on the lesser included offense of trafficking in drugs pursuant to N.C.G.S. § 90-95(h)(3b)(c). Defendant did not request this instruction at the trial court; therefore, our standard of review is plain error. N.C. R. App. P. 10(a)(4).

The plain error rule is traditionally applied in the "exceptional case where, after reviewing the entire record, the claimed error is [considered] a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.'" *State v. Odom*, 307 N.C. 655, 660 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (emphasis in original)); *see State v. Lawrence*, 365 N.C. 506, 516 (2012). A defendant shows plain error when "the jury probably would have reached a different result." *State v. Garcell*, 363 N.C. 10, 35 (2009). A charge on a lesser included offense is required when evidence is equivocal on the greater offense indicating the jury could (1) reasonably find the presence or non-presence of this element, and (2) without this element only a conviction of the lesser included offense makes sense. *State v. Riera*, 276 N.C. 361, 368 (1970).

Defendant contends a rational juror could have found him guilty of possessing less than 400 grams of methamphetamine due to the "somewhat confusing" or

equivocal testimony of Expert. Defendant contends Expert erred by (1) not testifying to the crime laboratory's uncertainty level, and (2) determining the net weight without a scale. Defendant's arguments are without merit.

There is nothing exceptional about Defendant's case where the trial court failed to provide unrequested instructions for a lesser included offense of trafficking methamphetamine. As to the uncertainty level, Defendant concedes even if the crime laboratory's uncertainty level was applied, the net weight would exceed 400 grams. Regarding the net weight, Defendant's counsel did not cross-examine Expert regarding the estimation at trial. Overall, it seems the only way the jury would have probably reached a different result regarding this charge against Defendant is if the jury suspended their belief regarding Expert's testimony and concluded the pills packaging weighed approximately 17 grams.[1] Therefore, the trial court did not commit plain error by failing to instruct on the lesser included offense.

## D. Effective Assistance of Counsel

Defendant contends he was denied effective assistance of counsel because his trial counsel failed to object to the trafficking by possession instruction and failed to request the lesser included offense instruction. We disagree.

A de novo standard of review applies when reviewing an ineffective assistance

---

[1] The lesser included offense is, N.C.G.S. § 90-95(h)(3b)(b), for possession of more than 200 grams but less than 400 grams; subtracting seventeen grams would be below the 400 grams threshold for what Defendant claims is the greater offense.

of counsel claim on direct appeal. *State v. Martin*, 64 N.C. App. 180, 181 (1983). A defendant's right to counsel includes the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). To prevail, a defendant must show his counsel's conduct was below an objective standard of reasonableness. *State v. Braswell*, 312 N.C. 553, 561–62 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). First, a defendant is required to show his counsel's performance was deficient, making serious errors that deny him his Sixth Amendment right to counsel. *Id.* at 562, 687. Second, a defendant must show the counsel's performance prejudiced him to the extent of denying defendant a fair trial. *Id.*

To establish these elements, a defendant is required to show there is a "reasonable probability that *but for* counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Allen*, 360 N.C. 297, 316 (2006) (emphasis added). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and to overcome such, a defendant must show the challenged action cannot be trial strategy. *State v. Lane*, 271 N.C. App. 307, 319 (2020) (quoting *Strickland*, 466 U.S. at 689)).

Establishing an ineffective assistance of counsel claim based on jury instructions require "the defendant [to] prove that without the requested jury instruction there was plain error in the charge." *State v. Pratt*, 161 N.C. App. 161, 165 (2003); *see e.g., State v. Lynn*, 290 N.C. App. 532, 538 (2023) (holding defense counsel's failure to object to trial court's instruction was not ineffective assistance of

counsel); *see also State v. Lane*, 271 N.C. App. 307, 311 (2020).

Defendant fails to show trial counsel's failure to object to the possession jury instruction was deficient. Defendant is charged with trafficking methamphetamine which may include either transportation or possession and there is sufficient evidence to prove either. Trial counsel's failure to object does not fall below an objective standard of reasonableness. Likewise, as previously discussed, there is no plain error regarding the failure of the trial court to instruct on the lesser included offense. Therefore, Defendant's ineffective assistance of counsel claim fails.

### III. Conclusion

In sum, Defendant properly preserved the fatal variance argument for appellate review. However, there is no fatal variance warranting reversal because Defendant is not prejudiced. Defendant constructively possessed the 400 grams of methamphetamine found in the black bookbag in the Motel room. The trial court did not err in failing to instruct on the lesser included offense. Defendant fails to show a basis for an ineffective assistance of counsel claim.

NO ERROR.

Judges ZACHARY and FREEMAN concur.

Report per Rule 30(e).