TYSON, Judge.
Rodney Stephon Hairston ("defendant") appeals from judgment entered after a jury found him to be guilty of: (1) Assault with a Deadly Weapon (a large rock) Inflicting Serious Injury; (2) Assault with a Deadly Weapon (a 1993 Jeep Wagoneer motor vehicle) with Intent to Kill; and (3) Assault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury. We find no error.
I. Background
Defendant and Fred Green ("Green") dated the same woman, Melisa Voss ("Voss"). At the time of the incident, defendant was thirty-five years old, owned a mortgage company, and weighed about 220 pounds. Green was thirty-eight years old, a professional bodybuilder, a night club bouncer, and weighed almost 300 pounds. On the evening of 20 October 2002, defendant and Voss returned to Voss's home after viewing a movie. Green had called and left a message on Voss's answering machine, which upset defendant. He persuaded Voss to call Green so that he could speak with him. The two men argued over the phone and threatened one another. Defendant challenged Green to a fight, which Green accepted. The call ended. Defendant knew Green was larger and stronger. He grabbed a kitchen knife and hid it under his shirt in case Green actually showed up at Voss's house.
Green drove over to Voss's house expecting to fight defendant. Green pulled his vehicle, a Jeep, into Voss's driveway, exited the vehicle, and stood in the driveway. Green never approached the house or Voss in a threatening manner. Defendant came out of Voss's front door and met Green in the driveway. The two began screaming, cursing, and threatening one another. Green punched defendant in the face, and both men threw punches.
Defendant stepped back after several punches, reached under his shirt, and brandished the kitchen knife. Green charged towards defendant, who stabbed him in the chest. Green's left knee gave out, and he fell to the ground. Defendant jumped on top of Green, and the two continued fighting on the ground. Defendant got off of Green and found a big rock. Defendant returned to where Green was lying on the ground and threw the rock on Green's legs several times. Defendant then tried to throw the rock on to Green's chest. Green blocked the blows with his arms and wrestled the rock away from defendant. Defendant ran to Green's Jeep and yelled, "I'm going to run you over with your own s-t!" Green dragged himself towards the road to seek help from passing cars. Defendant started the Jeep and drove it towards Green. Just before defendant reached Green, Voss stepped between the Jeep and Green. Defendant stopped the vehicle. Voss told defendant that she had called the police. Defendant exited Green's Jeep, ran to his own car, and drove away from Voss's house. Emergency medical services arrived and administered aid to Green's wounds. Green suffered a four to five inch knife wound to the chest, injuries to his left knee, and a broken right leg. Voss was taken to the sheriff's office.
Detective Beth Culbreth ("Detective Culbreth") of the Forsyth County Sheriff's Office responded to the stabbing report and went to the hospital where Green had been taken. She collected Green's clothing for evidence and took photographs of Green as the emergency room doctors operated on him. Detective Culbreth went to Voss's house to look for defendant, but he was not there. She then went to the sheriff's office to speak with Voss.
Detective Culbreth asked Voss to call defendant on his cell phone. Defendant answered the call, and Detective Culbreth spoke with him. Defendant claimed Green brought the knife to the fight, which he took from Green during the scuffle. Defendant refused to meet with Detective Culbreth or tell her his location. On 23 October 2002, defendant voluntarily came to the sheriff's office with his pastor. Defendant was indicted on 6 January 2003 for: (1) Assault with Deadly Weapon with Intent to Kill Inflicting Serious Injury; (2) Assault with Deadly Weapon Inflicting Serious Injury; and (3) Assault with Deadly Weapon with Intent to Kill. A superceding indictment was issued on 23 June 2003 charging defendant with: (1) Assault with a Deadly Weapon Inflicting Serious Injury; and (2) Assault with Deadly Weapon Intent to Kill.
On 26 June 2003, a jury returned guilty verdicts of: (1) Assault with a Deadly Weapon (a large rock) Inflicting Serious Injury; (2) Assault with a Deadly Weapon (a 1993 Jeep Wagoneer motor vehicle) with Intent to Kill; and (3) Assault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury. During the sentencing hearing, the trial court found four prior convictions resulting in a prior record level III. Defendant was sentenced to serve three consecutive prison terms of: (1) thirty-three months minimum, forty-nine months maximum; (2) thirty-three months minimum, forty-nine months maximum; and (3) 115 months minimum, 147 months maximum. Defendant appeals.
II. Issues
The issues on appeal are whether: (1) the trial court erred in instructing the jury on "flight;" (2) the trial court correctly denied defendant's motion to dismiss on the charges of Assault with a Deadly Weapon (a 1993 Jeep Wagoneer motor vehicle) with Intent to Kill and Assault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury; and (3) the trial court erred in denying defendant's request for a jury instruction of self-defense for thecharge of Assault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury.
III. Jury Instruction on Flight
Defendant argues that the trial court erred in instructing the jury on the issue of "flight." He admits leaving the scene of the fight, but contends there was insufficient evidence to conclude his departure was "flight." We disagree.
Our Supreme Court has held that "jury instructions relating to the issue of flight are proper as long as there is `some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged.'" State v. Allen, 346 N.C. 731, 741, 488 S.E.2d 188, 193 (1997) (quoting State v. Fisher, 336 N.C. 684, 706, 445 S.E.2d 866, 878 (1994), cert. denied, 513 U.S. 1098, 130 L. Ed. 2d 665 (1995)). Evidence that a person merely left the scene of the crime is not enough. State v. Thompson, 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991). The State must show the defendant took steps to avoid apprehension by the police. Id.
Here, Green and Voss testified that after Voss told defendant that she called the police, defendant hurriedly got in his car and fled the scene. Defendant did not render medical assistance or attempt to remove Green from the road. Defendant refused to meet with Detective Culbreth the night of the fight, tell her where he was, or disclose the location of his car. He did not turn himself in at the sheriff's department until three days later. Defendant attempts to explain his departure by contending he acted in self-defense and did not think he was at fault. He told Detective Culbreth that Green brought the knife and he did not remember driving Green's vehicle. However, our Supreme Court has held that "the fact that there may be other reasonable explanations for [the] defendant's conduct does not render the instruction improper." State v. Irick, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977) (holding that "defendant's contention that his response to the fire was the natural response of a retarded person from an unexpected result does not negate the evidence of flight").
The record shows defendant "did more than merely leave the scene of the crime" and supports a finding that defendant was consciously aware of his guilt. State v. Lloyd, 354 N.C. 76, 120, 552 S.E.2d 596, 626 (2001); see also State v. Beck, 346 N.C. 750, 758, 487 S.E.2d 751, 757 (1997) (evidence sufficient to support instruction on flight where defendant shot victim, left residence without rendering any assistance or seeking to obtain medical assistance for victim, and told cab driver to leave area where he resided after seeing police vehicles there); Fisher, 336 N.C. at 706, 445 S.E.2d at 878 (evidence sufficient to warrant instruction on flight where defendant ran from scene and some hours later telephoned Winston-Salem Police Department and turned himself in); State v. Sweatt, 333 N.C. 407, 419, 427 S.E.2d 112, 119 (1993) (no error in instruction on flight where evidence showed that "shortly after the victim was murdered, defendant passed [a police officer] on the highway traveling at a very high rate of speed"). Ourreview of the transcript and record shows sufficient evidence to support the trial court's instruction to the jury on "flight." This assignment of error is overruled.
IV. Motion to Dismiss
Defendant asserts the trial court erred in denying his motion to dismiss on the charges of Assault with a Deadly Weapon (a 1993 Jeep Wagoneer motor vehicle) with Intent to Kill and Assault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury. We disagree.
In State v. Barnes, our Supreme Court reiterated the standard of review for motions to dismiss in criminal trials. 334 N.C. 67, 430 S.E.2d 914 (1993). The Barnes Court stated:
Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.
334 N.C. at 75, 430 S.E.2d at 918 (quoting State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)).
Evidence is substantial if relevant and adequate to convince a reasonable mind to accept a conclusion. State v. Vick, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995) (citing State v. Vause, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991)). If there is substantial evidence, whether direct, circumstantial, or both, to support a finding that the offense charged has been committed and that the defendant committed it, the motion to dismiss should be denied and the case goes to the jury. State v. Williams, 319 N.C. 73, 79, 352S.E.2d 428, 432 (1987) (quoting State v. Young, 312 N.C. 669, 680, 325 S.E.2d 181, 188 (1985)). But, "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." Powell, 299 N.C. at 98, 261 S.E.2d at 117 (citations omitted).
In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. State v. Gibson, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995). The trial court must also resolve any contradictions in the evidence in the State's favor. State v. Lucas, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witnesses' credibility. Id. It is concerned "only with the sufficiency of the evidence to carry the case to the jury . . . ." State v. Lowery, 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983). Ultimately, the question for the court is whether a "reasonable inference" of defendant's guilt may be drawn from the circumstances. Powell, 299 N.C. at 99, 261 S.E.2d at 117.
A. Assault with a Deadly Weapon (Jeep) with Intent to Kill
Defendant was charged with Assault with a Deadly Weapon (a 1993 Jeep Wagoneer motor vehicle) with Intent to Kill. The elements of the offense are: (1) an assault; (2) with a deadly weapon; (3) with the intent to kill. State v. Coria, 131 N.C. App.449, 456, 508 S.E.2d 1, 5 (1998) (citing N.C. Gen. Stat. § 14-32(c)).
Our Supreme Court defines assault as:
an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.
State v. Roberts, 270 N.C. 655, 659, 155 S.E.2d 303, 306 (1967) (citations omitted).
A deadly weapon is not necessarily something created with the intent that it be used to kill. State v. Strickland, 290 N.C. 169, 178, 225 S.E.2d 531, 538 (1976) (citing State v. Smith, 187 N.C. 469, 121 S.E. 737 (1924)). Instead, "[t]he deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the weapon itself." Smith, 187 N.C. at 470, 121 S.E. at 737. Our Supreme Court has held a motor vehicle may be a deadly weapon when someone "strikes and injures a person, provided there is either (1) an actual intent to inflict injury, or (2) culpable or criminal negligence from which such intent may be implied." State v. Eason, 242 N.C. 59, 65, 86 S.E.2d 774, 778 (1955).
An intent to kill is usually shown through inferences from the established underlying facts and circumstances of the case. State v. Thacker, 281 N.C. 447, 455, 189 S.E.2d 145, 150 (1972) (citations omitted). The manner in which the assault occurred and the conduct of the parties are all relevant factors for the jury to consider. Id. Evidence at trial showed that defendant attempted to run over Green with his Jeep. After slamming a rock on Green several times as he lay on the ground, defendant yelled at Green, "I'm going to run you over with your own s-t!" Defendant entered Green's Jeep, turned on the ignition, and started driving towards an incapacitated Green. Defendant did not stop the vehicle until Voss came and stood between Green and the Jeep. These facts support a finding that defendant: (1) assaulted Green by attempting to run him over with a motor vehicle; (2) used the motor vehicle in a manner intending to inflict serious injury; and (3) intended to kill Green by attempting to run him over with a motor vehicle after stabbing him and slamming a rock on him several times.
Viewed in the light most favorable to the State, substantial evidence exists to justify submitting the charge to the jury. The trial court properly denied defendant's motion to dismiss the one count of Assault with a Deadly Weapon (a 1993 Jeep Wagoneer motor vehicle) with Intent to Kill. This portion of defendant's assignment of error is overruled.
B. Assault with a Deadly Weapon (Knife) with Intent to Kill Inflicting Serious Injury
Defendant was convicted of Assault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury. The elements of this offense are: (1) an assault; (2) with the use of a deadly weapon; (3) with an intent to kill; and (4) inflicting serious injury, not resulting in death. State v. Tirado, 358 N.C. 551, 579, 599 S.E.2d 515, 534 (2004); see N.C. Gen. Stat. § 14-32(a)(2003). Assault with a deadly weapon with intent to kill is a lesser-included offense of this charge. State v. Parker, 7 N.C. App. 191, 193-94, 171 S.E.2d 665, 666 (1970). The only additional element is "inflicting serious injury, not resulting in death." N.C. Gen. Stat. § 14-32(a). A serious injury is defined as a physical, bodily injury resulting from an assault with a deadly weapon. State v. James, 321 N.C. 676, 688, 365 S.E.2d 579, 586-87 (1988).
The record indicates substantial evidence exists to support a finding that defendant committed an Assault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury. Defendant prepared to fight Green by hiding a kitchen knife under his shirt. Defendant used the knife to stab Green, who was unarmed, inflicting a four to five inch wound. Defendant slammed a rock on Green several times before attempting to run him over with a motor vehicle.
Viewed in the light most favorable to the State, substantial evidence exists to show defendant assaulted Green with the kitchen knife, a deadly weapon under these facts, inflicted a serious bodily injury, and intended to kill him. The trial court properly denied defendant's motion to dismiss the charge of Assault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury and did not err in submitting it to the jury. Defendant's assignment of error is overruled.
V. Jury Instruction on Self-Defense
Defendant asserts the trial court erred in not submitting an instruction on self-defense to the jury concerning the charge ofAssault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury. We disagree.
A defendant is entitled to an instruction on self-defense from the trial court to the jury "if there is any evidence in the record . . . that it was necessary or reasonably appeared to be necessary to kill his adversary in order to protect himself from death or great bodily harm." State v. Bush, 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982) (citing State v. Spaulding, 298 N.C. 149, 156, 257 S.E.2d 391, 395 (1979)). This same standard applies in cases of assault with intent to kill. State v. Anderson, 230 N.C. 54, 55, 51 S.E.2d 895, 897 (1949).
Defendant asserts evidence exists to qualify his stabbing of Green with a kitchen knife as an act of self-defense. He argues that he hid the knife under his shirt before leaving Voss's house to fight Green because he knew Green was a professional bodybuilder, weighed 300 pounds, and worked as a nightclub bouncer. Defendant testified that he intended to use the knife only to defend against Green's attacks. He claimed that when he stabbed Green, he was just trying to cut "one of those big arms" to disable him and protect himself. Defendant's argument for an instruction of self-defense is misplaced.
The doctrine of self-defense is not available to a person who voluntarily, aggressively, and willingly enters into a fight without legal provocation. State v. Plemmons, 29 N.C. App. 159, 162, 223 S.E.2d 549, 551 (1976) (quoting State v. Watkins, 283 N.C. 504, 511, 196 S.E.2d 750 (1973)). The one exception occurs whenthe person abandons the fight, withdraws from it, and gives notice to the adversary that he has done so. Plemmons, 29 N.C. App. at 162, 223 S.E.2d at 551.
In the case at bar, defendant sought a fight with Green without legal excuse. First, he called Green to confront him about leaving a message on Voss's answering machine. Second, he exchanged threats with Green over the phone and agreed to a fight. Third, when Green arrived at Voss's house, defendant left the house to meet him in the driveway to fight. Both men voluntarily, aggressively, and willingly entered into the fight, although Green threw the first punch.
Once the fight ensued, defendant never abandoned the fight, withdrew, or gave notice to Green that he was doing so. He was not a passive victim attacked by a larger assailant. State v. Tann, 57 N.C. App. 527, 529, 291 S.E.2d 824, 826 (1982) (citations omitted) (the jury may consider the size and strength of the defendant's adversary in determining whether the defendant's actions were reasonable). Defendant did not fight Green to defend the house or Voss. State v. Dial, 38 N.C. App. 529, 532, 248 S.E.2d 366, 368 (1978) (defendant may justify an assault made while protecting his home from trespassers); State v. Hornbuckle, 265 N.C. 312, 315, 144 S.E.2d 12, 14 (1965) (doctrine of self-defense may apply to assaults committed in defense of third parties). Both men share equal blame for the fight. Plemmons, 29 N.C. App. at 162, 223 S.E.2d at 551 (the right of self-defense is not available to those who are at fault). We find no evidence to support defendant's contention that he acted in self-defense when he stabbed Green in the chest. Rather, defendant chose to use a kitchen knife to level the playing field against a larger adversary he voluntarily fought without legal provocation. This assignment of error is overruled.
VI. Conclusion
Sufficient evidence existed to support an instruction by the trial court to the jury on "flight." The trial court properly denied defendant's motion to dismiss the two charges of Assault with a Deadly Weapon (a 1993 Jeep Wagoneer motor vehicle) with Intent to Kill and Assault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury. Defendant failed to offer evidence justifying an instruction by the trial court to the jury on self-defense concerning the charge of Assault with a Deadly Weapon (a knife) with Intent to Kill Inflicting Serious Injury. We have carefully examined defendant's assignments of error and find them to be without merit.
No Error.
Judges BRYANT and LEVINSON concur.
Report per Rule 30(e).