**STATE v. JAMES**

[224 N.C. App. 164 (2012)]

STATE OF NORTH CAROLINA

v.

JOHNNY LEE JAMES

No. COA12-540

Filed 4 December 2012

## 1. Evidence—opinion testimony—weight of chair—sufficient support—helpful—province of jury not invaded

The trial court did not err in an assault with a deadly weapon case by overruling defendant's objection to the opinion testimony of Deputy Causey as to the weight of the chair alleged to be a deadly weapon. Deputy Causey's observation of the wooden kitchen table chairs and of defendant throwing one chair in an overhand motion, "like a baseball," was sufficient to support Deputy Causey's opinion that the chair weighed approximately ten pounds. The testimony was likely helpful and did not impermissibly intrude upon the province of the jury.

## 2. Assault—deadly weapon—chair—attained character of deadly weapon

The trial court did not err in an assault with a deadly weapon case by denying defendant's motion to dismiss for insufficient evidence. There was sufficient evidence to determine that the chair defendant wielded attained the character of a deadly weapon based upon the manner of its use.

Appeal by defendant from judgment entered 14 October 2011 by Judge Robert T. Sumner in Rowan County Superior Court. Heard in the Court of Appeals 9 October 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Kimberly A. D'Arruda, for the State.*

*Gilda C. Rodriguez for defendant-appellant.*

BRYANT, Judge.

Where opinion testimony on the weight of a chair at the crime scene was likely helpful and did not impermissibly intrude upon the province of the jury, the trial court did not err in overruling defendant's objection. Also, where there was sufficient evidence to determine that the chair attained the character of a deadly weapon based

upon the manner of its use, we find no error in the trial court's denial of defendant's motion to dismiss the charge of assault with a deadly weapon on a government official.

On 28 August 2010, Deputy Matthew Causey of the Rowan County Sheriff's Department responded to a call reporting a domestic disturbance near the intersection of Woodsdale Street and Crystal Crossing. Arriving at the scene, the deputy was on the lookout for a woman being chased by a man, when he observed the victim hiding in the bushes. The victim exited the bushes, walking toward the law enforcement officer until she observed a van appear several blocks away. "[S]he said that's him and jumped from the roadway back into the bushes." After the van turned off on a side street, the victim again exited the bushes. Deputy Causey described her as having red marks across her neck and on her arms. The victim stated that she had been choked and that her assailant had hit and chased her. Deputy Causey took the victim back to her residence to retrieve some clothes. While the victim was inside gathering her things, Deputy Causey stood just outside the front door. Deputy Causey observed a man, defendant Johnny James, walking quickly toward the residence, yelling: "oh hell no"; and "effing police." When he reached a point twenty feet from the residence, Deputy Causey smelled alcohol. Upon reaching the deputy, defendant, outweighing the deputy by one hundred pounds, shoved the deputy out of the way and ran into the residence. Deputy Causey engaged defendant just outside of the kitchen area.

Deputy Causey informed defendant that he was under arrest for assaulting an officer. Deputy Causey testified that defendant stated, "F you. You're going to have to effing kill me, mother effer." At that point, Deputy Causey and defendant engaged in a physical altercation. During the altercation, Deputy Causey was able to set off an alarm indicating that he was in need of assistance. At one point, defendant and Deputy Causey stood on opposite sides of a kitchen table. Defendant placed his hand in the front pocket of his pants and said, "I got something for you M effer. I'm going to blow your brains out right here and you better kill me or I'm going to kill you M effer, yeah." Despite defendant's threat, Deputy Causey determined that based on the lack of a bulge in defendant's pants, defendant was not carrying a gun. Holstering his own gun, Deputy Causey pulled out his taser. Defendant approached, picked up a chair from the kitchen table and threw it in an overhand motion at Deputy Causey. Deputy Causey was able to evade the chair and again engaged defendant in a physical confrontation. Soon after striking defendant with his baton, defendant surrendered.

STATE v. JAMES

[224 N.C. App. 164 (2012)]

On 27 September 2010, indictments were entered against defendant in Rowan County Superior Court on charges of first-degree kidnapping, assault inflicting physical injury by strangulation, assault on a government officer, and assault with a deadly weapon on a government officer. A trial before a jury was commenced during the 10 October 2011 criminal session in Rowan County Superior Court before presiding Judge Robert T. Sumner. Following the trial, the jury found defendant guilty of false imprisonment, assault on a government officer, and assault with a deadly weapon on a government officer. Defendant appeals.

On appeal, defendant questions whether the trial court erred by (I) overruling defendant's objection to the opinion testimony of Deputy Causey; and (II) denying defendant's motion to dismiss the charge of assault with a deadly weapon on a government officer.

*I*

Defendant argues that the trial court erred by overruling his objection to the opinion testimony of Deputy Causey as to the weight of the chair alleged to be a deadly weapon. Defendant contends that there was a lack of foundation to support any inference that Deputy Causey had personal knowledge of the weight of the chair thrown at him and that Deputy Causey's testimony as to the chair's weight impermissibly invaded the province of the jury to make that determination. We disagree.

"The standard of review for admission of evidence over objection is whether it was admissible as a matter of law, and if so, whether the trial court abused its discretion in admitting the evidence." *State v. Bodden*, 190 N.C. App. 505, 512, 661 S.E.2d 23, 27 (2008) (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Elliott*, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (2006) (citation and quotations omitted). But, "[e]ven if the admission of [evidence] was error, in order to reverse the trial court, the appellant must establish the error was prejudicial. If the other evidence presented was sufficient to convict the defendant, then no prejudicial error occurred." *Bodden*, 190 N.C. App. at 510, 661 S.E.2d at 26 (citing N.C. Gen. Stat. § 15A-1443(a) (2007) (defendant must show there is a reasonable possibility a different result would have occurred but for the error)).

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or infer-

ences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-701 (2011); *see State v. Barnhill*, 166 N.C. App. 228, 232, 601 S.E.2d 215, 218 (2004) ("Absolute accuracy, however, is not required to make a witness competent to testify . . . ." (citation and quotations omitted)).

The chair was not presented as evidence at trial, but pictures of the kitchen chairs taken at the crime scene were introduced into evidence and published to the jury. Deputy Causey testified as follows:

A. [W]hen I was pulling my Taser out he was coming around this side of the table (indicating) and grabbed one of these chairs (indicating) by the top. You know, just reaching his hand over there and grab it. So as soon as I shot my Taser he threw the chair right at me.

. . .

Q. So what part of your body was the chair coming at?

A. My head.

. . .

Q. But you're sure one of those chairs, those wooden chairs is what was thrown at you?

A. Oh, yes.

Q. And you say he picked it up I guess with his hand underneath the arch?

A. Right, yeah. Right underneath this arch (indicating), you know, you can just slide your hand under there and grab a hold of the top rail and slung it over his shoulder.

Q. Threw it overhanded like a baseball?

A. Right.

Q. And at the point that he threw the chair at you how far away were you from him approximately?

A. I wouldn't give it any more than 15 feet. Probably weren't any closer than 10 feet. So I'd say 10, 15 feet.

Deputy Causey further provided the following responses.

Q.   Let's talk about the chair. Would you estimate about how much that chair weighs?

A.   Probably about ten pounds.

[Defense counsel]: Well, I'm going to object unless he has a foundation for that.

THE COURT: Overruled.

[Defense counsel]: Might we be heard at the bench?

THE COURT: Yes.
(Counsel approached the bench.)

[The State]: Is that overruled, Your Honor?

THE COURT: Yes, objection overruled.

Q.   Could you repeat that, sir?

A.   I estimated about ten pounds.

Q.   And it looks like it's a wooden chair.

A.   That's correct.

Q.   And actually you're able to see that the chair, one of the chairs is broken, correct?

A.   Yes, sir.

Q.   What was it internally composed of?

A.   Wood. It was splintered.

We hold that Deputy Causey's observation of the wooden kitchen table chairs and of defendant throwing one chair in an overhand motion, "like a baseball," was sufficient to support Deputy Causey's opinion that the chair weighed approximately ten pounds. Furthermore, as the chair was not introduced at trial, Deputy Causey's testimony in conjunction with the photo of the kitchen chairs published to the jury, was likely helpful to the jury in reaching their result and did not impermissibly intrude upon the province of the jury. Accordingly, defendant's argument is overruled.

## II

Defendant argues that the trial court erred in failing to grant his motion to dismiss the charge of assault with a deadly weapon on a government officer for insufficient evidence that the chair amounted to a deadly weapon. We disagree.

"It is well settled that in ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each essential element of the crime and whether the defendant is the perpetrator of that crime." *State v. Everette*, 361 N.C. 646, 651, 652 S.E.2d 241, 244 (2007) (citation and quotations omitted). "Substantial evidence is evidence which a reasonable mind could conclude to be adequate to support a conclusion." *State v. Batchelor*, 167 N.C. App. 797, 800-01, 606 S.E.2d 422, 424 (2005) (citation omitted). "[I]n ruling on a motion to dismiss[] [t]he evidence is to be considered in the light most favorable to the State[, and] the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom . . . ." *State v. Patino*, 207 N.C. App. 322, 327, 699 S.E.2d 678, 682 (2010) (citation omitted).

North Carolina General Statutes, section 14-34.2 provides that "an individual is guilty of felony assault with a deadly weapon on a government official where the individual: (i) commits an assault; (ii) with a firearm or other deadly weapon; (iii) on a government official; (iv) who is performing a duty of the official's office." *State v. Smith*, 186 N.C. App. 57, 65, 650 S.E.2d 29, 35 (2007) (brackets omitted). Defendant challenges only that there was insufficient evidence to support the finding that the kitchen table chair was a deadly weapon within the context of section 14-34.2.

> The deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the weapon itself. Where the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . is one of law, and the Court must take the responsibility of so declaring. But where it may or may not be likely to produce fatal results, according to the manner of its use . . . its alleged deadly character is one of fact to be determined by the jury.

*Batchelor*, 167 N.C. App. at 800, 606 S.E.2d at 424 (citation omitted). *See State v. Lane*, 1 N.C. App. 539, 162 S.E.2d 149 (1968) (holding no

error in the denial of the defendant's motion for nonsuit on the charge of assault with a deadly weapon, where the defendant threw a liquor bottle at the victim from a distance of twenty-five feet striking him in the face. "In order to be a deadly weapon . . . it is sufficient if, under the circumstances of its use, it is an instrument which is likely to produce death or great bodily harm, having regard to the size and condition of the parties and the manner in which the weapon is used." (citation omitted)).

Here, the jury was presented with evidence that defendant outweighed Deputy Causey by over one hundred pounds. When he attempted to arrest defendant and take him into custody, Deputy Causey testified that defendant stated, "F" you. You're going to have to effing kill me, mother effer." Deputy Causey testified that shortly thereafter, defendant stated, "I got something for you M effer. I'm going to blow your brains out right here and you better kill me or I'm going to kill you M effer, yeah." As Deputy Causey prepared to fire a taser, defendant came around the kitchen table, picked up a table chair and from a distance of ten to fifteen feet, threw it with an overhand motion at Deputy Causey's head, almost hitting him. After, subduing defendant, placing him under arrest, and confining him to the back of a law enforcement vehicle, Deputy Causey was able to survey the damage to the residence. Though he could not identify the exact chair that was thrown at him, Deputy Causey noted that there were several broken chairs and one that was smashed. Photos of the crime scene were published to the jury.

We hold that given the manner of its use, the jury had sufficient evidence to determine that the kitchen table chair defendant wielded attained the character of a deadly weapon. *Batchelor*, 167 N.C. App. at 800, 606 S.E.2d at 424. Therefore, the trial court did not err in denying defendant's motion to dismiss. And, accordingly, defendant's argument is overruled.

No error.

Judges McGEE and THIGPEN concur.